Michele Anderson-West (9249)
Austin Egan (13203)
STAVROS LAW P.C.
8915 South 700 East, Suite 202
Sandy, Utah 84070
Tel: (801) 758-7604
Fax: (801) 893-3573
michele@stavroslaw.com
austin@stavroslaw.com

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
### DISTRICT OF UTAH-CENTRAL DIVISION

| | |
|---|---|
| SAYED MOUSAVI,<br><br>        Plaintiff,<br><br>v.<br><br>CLEAR LINK TECHNOLOGIES, LLC dba CLEARLINK,<br><br>        Defendant. | COMPLAINT<br>(JURY DEMAND) |

Sayed Mousavi ("Mousavi" or "Plaintiff"), by and through his undersigned counsel, brings this action against Clear Link Technologies, LLC dba Clearlink ("Clearlink" or "Defendant") pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et seq. and to redress Defendant's acts of employment discrimination and retaliation.

### PARTIES, JURISDICTION, AND VENUE

1. Mousavi is an individual and at all times relevant herein, resided in Salt Lake County, State of Utah.

2. Clearlink is a for-profit corporation organized under the laws of the State of Utah and at all times relevant herein, conducted business in Salt Lake County, State of Utah.

3. At all times relevant herein, Defendant acted by and through its agents, servants, and employees, each of whom acted at all times relevant herein, in the course and scope of their employment with and for Defendant.

4. This court has jurisdiction over the actions asserted herein pursuant to 28 U.S.C. §§ 1331 and 1343.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391 (b) and (c), in that Mousavi resides in this district, Defendant does business in this district and the events giving rise to Mousavi's claims arose within this district.

## ADMINISTRATIVE PROCEEDINGS

6. In June 2017, Mousavi filed a timely Charge of Discrimination with the Utah Antidiscrimination and Labor Division and the U.S. Equal Employment Opportunity Commission ("EEOC") against Defendant alleging discrimination and retaliation based on race, national origin disability and religion.

7. The EEOC issued a Notice of Right to Sue dated February 2, 2018. This complaint is timely filed within 90 days of Mousavi's receipt thereof.

## GENERAL ALLEGATIONS

8. The preceding paragraphs are incorporated herein by reference.

9. Mousavi is of Middle-Eastern descent and possesses certain physical, cultural and linguistic characteristics of his ancestors.

10. Defendant hired Mousavi in February 2017 to work as a sales executive at its call center in Salt Lake City.

11. Mousavi's job duties and responsibilities as a sales executive included, but were not limited to: taking incoming calls, answering questions about Defendant's products and selling Defendant's products, which included Dish Network services and Vivint Security systems.

12. During his first several weeks of employment, Mousavi was in training and earned approximately $12.00 per hour.

13. While in training, Mousavi and other new employees were taught about the Defendant's products, taught sales techniques and presentation skills.

14. Mousavi and the other new employees practiced the sales techniques and presentation skills in a group setting.

15. Defendant treated Mousavi different than it treated other employees from the start. Some examples include, but are not limited to:

   a. Defendant asked Mousavi where he was from;

   b. Defendant asked Mousavi what language he spoke;

   c. Defendant asked Mousavi if he was "Taliban;"

   d. Defendant asked Mousavi about shooting a gun;

   e. Defendant asked Mousavi about "his people's" involvement in 9-11;

   f. Defendant asked Mousavi if his beard looked like "ISIS."

   g. Defendant regularly and routinely spoke to Mousavi in a degrading and demeaning manner.

16. Defendant did not ask any other employee where they were from.

17. Defendant did not ask any other employee what language they spoke.

18. Defendant did not ask any other employee if they were Taliban.

19. Defendant did not ask any other employee if they shot a gun.

20. Defendant did not ask any other employee about "their people's" involvement in 9-11.

21. Defendant did not ask any other employee if his beard looked like ISIS.

22. Defendant did not regularly and routinely speak to other employees in a degrading and demeaning manner.

23. During the first few days of training, Mousavi and the other new employees took incoming calls on a limited basis to practice their sales techniques and speaking skills.

24. However, after the first day or two, Defendant told Mousavi he could not take any incoming calls because his accent made him sound "rude" and like a "scammer."

25. Defendant did not tell any other new employees they could not take incoming calls because their accent made them sound rude.

26. Defendant did not tell any other new employees that they could not take incoming calls because they sounded like a "scammer."

27. Notwithstanding the harassment and discrimination Mousavi was an excellent sales executive and received Defendant's sales' executive certification.

28. Upon receiving the sales executive certification, Mousavi went from making approximately $12.00 per hour to approximately $10.25 per hour plus commission.

29. Defendant did not, however, explain to Mousavi how commissions were calculated and during his employment, Mousavi believes Defendant did not pay him the wages he was owed.

30. Mousavi, at all times during his employment with Defendant, met or exceeded Defendant's expectations for a sales executive. For example, Mousavi was often Defendant's top revenue generator.

31. Shortly after Mousavi received his certification, he was directed to sit at a desk that was open to noise and distractions.

32. Mousavi asked Defendant if he could move to a different open desk due to the distractions and because Mousavi suffers from a hearing injury to his left ear.

33. At the time he made the request, Defendant had several unused empty desks that Mousavi could have moved to.

34. However, Defendant knowingly moved Mousavi to a desk that was in a worse position than his previous desk, which was next to a break area where employees were on their phones, playing games and talking loudly.

35. Mousavi spoke to his manager and asked to move to a quieter, open desk.

36. Defendant instructed Mousavi he could stay where he was moved or go back to his original desk.

37. Mousavi was subjected to increased scrutiny from the moment he was hired. For example, he was reprimanded for making outbound calls, when other employees were not reprimanded. He was reprimanded for taking sales calls when other employees were busy-but Defendant did not reprimand other employees for taking Mousavi's sales. Mousavi was accused of using his cell phone while at work, when other employees openly played games and were on their cell phones during work hours.

38. Mousavi went to human resources and notified them of the denied request for accommodation and the ongoing systematic discrimination and harassment.

39. After Mousavi went to HR, Defendant treated Mousavi even worse.

40. One of Mousavi's managers became increasingly hostile toward him, leaving Mousavi distressed and in fear for his life.

4

41. This manager would go out of his way to walk behind Mousavi's work space and shove Mousavi's chair as he walked by, disrupting Mousavi's work and making him afraid.

42. Mousavi reported the manager's conduct to his supervisor and HR, who promised to investigate the manager's conduct.

43. In the days following reporting the manager to HR, Defendant's managers and Mousavi's co-workers seemed to keep their distance from him and seemed to laugh or snicker as Mousavi walked past their desks.

44. On or around June 1, 2017, the manager who had increased hostility toward Mousavi and whom he reported to HR, confronted Mousavi about allegedly using his cell phone.

45. Mousavi told the manager that he had not been using his cell phone. The manager then became upset, pulled out a ball-point pen and jabbed Mousavi in the chest, while yelling at Mousavi.

46. Mousavi, feared for his life with the manager's actions with the pen and knowing the manager carried a knife, and immediately left the building.

47. The manager followed Mousavi down the stairs and watched Mousavi get into his car.

48. Mousavi feared for his safety and called 911 and his supervisor to report the incident.

49. The next day, HR contacted Mousavi and asked that he fill out an incident report and promised to investigate.

50. A few days later, Defendant terminated Mousavi's employment for allegedly being on his cell phone.

51. Defendant's reason for terminating Mousavi was pretextual.

52. The real reason Defendant terminated Mousavi's employment was because Defendant discriminated against him due to his race and national origin and retaliated against him after he reported the discrimination to HR.

## FIRST CAUSE OF ACTION
### (Discrimination in Violation of Title VII)

53. The preceding paragraphs are incorporated herein by reference.

54. Defendant, through its managers and employees, engaged in frequent national origin based discriminatory workplace conduct towards Mousavi.

55. Defendant's actions were taken because of Mousavi's national original and/or descent.

56. These actions have caused Mousavi financial harm in the form of lost benefits and wages, including back pay and front pay, as well as emotional distress and other compensatory damages.

57. Mousavi is entitled to recover damages for all past and future pecuniary losses, as well as emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and all other non-pecuniary losses caused by Defendant's unlawful discrimination.

58. Defendant's actions described above were done with malice or a reckless indifference to Mousavi's federally protected right to work in an environment where he is not subject to discrimination.

59. Due to the willful and malicious nature of the discrimination against Mousavi, he is entitled to an award of punitive damages in an amount sufficient to deter Defendant from engaging in discriminatory conduct in the future.

60. Mousavi is also entitled to recover all attorneys' fees and costs expended in pursuing this action, and such other relief as this Court deems appropriate.

## SECOND CAUSE OF ACTION
**(Retaliation in Violation of Title VII)**

61. The preceding paragraphs are incorporated herein by reference.

62. Mousavi went to HR and opposed Defendant's discriminatory treatment of him and lodged a complaint with human resources.

63. Defendant's Human Resource Department took no steps to stop the problems which only served to embolden Defendant's managers whose conduct and actions became more egregious.

64. Because Mousavi opposed the discrimination and spoke with Human Resources about his concerns, Defendant took adverse employment actions against Mousavi, including termination of his employment.

65. Defendant retaliated against Mousavi by becoming more hostile towards Mousavi, subjecting him to increased scrutiny and monitoring, issuing false accusations and discipline and ultimately terminating his employment.

66. These actions have caused Mousavi financial harm in the form of lost benefits and wages, including back pay and front pay, as well as emotional distress and other compensatory damages.

67. Mousavi is entitled to recover damages for all past and future pecuniary losses, as well as emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and all other non-pecuniary losses caused by Defendant's unlawful discrimination.

68. Defendant's actions described above were done with malice or a reckless indifference to Mousavi's federally protected right to work in an environment where he is not subject to discrimination.

69. Due to the willful and malicious nature of the discrimination against Mousavi, he is entitled to an award of punitive damages in an amount sufficient to deter Defendant from engaging in discriminatory conduct in the future.

70. Mousavi is also entitled to recover all attorneys' fees and costs expended in pursuing this action, and such other relief as this Court deems appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Mousavi respectfully requests that the Court enter judgment in his favor and against Clearlink and award the following relief:

a. Back and front pay, and any other pecuniary losses;

b. Compensatory and consequential damages;

c. Punitive damages, in substantial, appropriate, and reasonable amounts;

d. Pre-judgment and post-judgment interest at the highest lawful rate;

e. Attorneys' fees and costs of this action, as appropriate; and

f. Any such further relief as justice allows.

Dated this 28th day of March 2018.

    /s/  Michele Anderson-West
STAVROS LAW, P.C.
8915 South 700 East, Suite 202
Sandy, Utah 84070
*Attorneys for Plaintiff*